UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **MEYER HOFFER, Individually and on Behalf of All Others Similarly Situated,** | CASE NO. 1:06CV763 |
| Plaintiff, | Judge Christopher A. Boyko |
| vs. | |
| | OPINION AND ORDER |
| **COOPER WIRING DEVICES, INC., formerly known as Eagle Electric Manufacturing Company, Inc.** | |
| Defendant. | |

**CHRISTOPHER A. BOYKO, J.:**

This matter comes before the Court upon Defendant Cooper Wiring Devices, Inc.'s Motion to Dismiss pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. (ECF DKT #16.) Plaintiff Meyer Hoffer's complaint, individually and on behalf of others similarly situated, alleges five causes of action: (1) violation of the Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 *et. seq.* (OCSPA); (2) unjust enrichment; (3) breach of implied warranty in tort; (4) negligence (defective design and failure to warn); and (5) strict liability. For the reasons set forth below, this Court grants the Motion to Dismiss the claims of breach of implied warranty in tort, unjust enrichment, negligence, strict liability, and the class action claim of an OCSPA violation. This Court denies the Motion to Dismiss the individual claim of an OCSPA violation.

### I. FACTUAL BACKGROUND

Cooper Wiring Devices, Inc. (Defendant) manufactures receptacles, which are the

devices concealed in walls that establish the electrical connection to an inserted plug. Two types of receptacles are used in the United States: binding head terminal receptacles and push-in terminal receptacles. Defendant manufactures and sells push-in terminal receptacles. Plaintiff alleges he owns numerous push-in receptacles in his home and these receptacles are more dangerous than binding-head terminal receptacles. Plaintiff alleges push-in receptacles are subject to accelerated deterioration, degradation, and higher resistance of electrical current flow which increase the risk of failure, fire, or electric shock. Plaintiff further alleges that failures of push-in receptacles have caused fires resulting in property loss, injury, and death. Not only does Plaintiff allege deterioration of the receptacles themselves and risk of fire, but he also alleges the receptacles damage the fixed wiring in homes. Despite the theories set forth in the complaint about push-in receptacles being defective, Plaintiff never alleges he personally has experienced any failure of his receptacles, discovered any degradation in his receptacles or damaged wiring in his home, or injury as the result of fire. Yet, Plaintiff asserts he has suffered damages and losses and will be obligated to expend money in the future to repair and/or replace the defective receptacles.

Plaintiff alleges that since no later than 1989, Defendant has known, or should have known, its push-in receptacles posed a significant risk of danger. In September 29, 1989, the Consumer Product Safety Commission reported the results of field studies establishing that overheating push-in receptacles present a fire hazard. Plaintiff also alleges the push-in receptacles fail to meet the standards set forth by the National Electric Code (NEC). The complaint states that despite Defendant's knowledge of the dangers posed by the receptacles, Defendant did not inform consumers of the defects and continued to sell the receptacles.

Plaintiff alleges Defendant misrepresented its receptacles were of superior quality and safe when, in fact, they were not.

Plaintiff filed his complaint on behalf of himself and others similarly situated, consumers who have purchased or own Defendant's push-in receptacles in residential dwellings. Plaintiff specifically excluded from the class consumers who have sustained personal injury and or property damage other than damage to wiring around the receptacles. Defendant moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. LAW AND ANALYSIS

### A. Standard of Review

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint, and is designed to determine "whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). For purposes of the motion, the court must presume all factual allegations of the complaint are true and make all reasonable inferences in favor of the nonmoving party. *Roth Steel Products v. Sharon Steel Co.*, 705 F.2d 134, 155 (6th Cir. 1983). However, a trial court will not accept as true legal conclusions or unwarranted inferences cast in the form of factual allegations. *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998); *see City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F. Supp. 971, 975 (S.D. Ohio 1993). A court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

**B. The Ohio Products Liability Act (OPLA) does not preempt Plaintiff's claims.**

Although it has been found the OPLA preempts common law product liability claims when the claims are covered by the act, *see Tompkin v. Am. Brands*, 219 F.3d 566 (6th Cir. 2000), and OCSPA claims covered by the OPLA and involving physical injury, *see Bouchard v. Am. Home Prod. Corp.*, No. 3:98 CV 7541, 2002 U.S. Dist. LEXIS 27517 (N.D. Ohio May 24, 2002), it does not preempt the claims Plaintiff alleges here. Ohio Rev. Code § 2307.72(C) states, "Any recovery of compensatory damages for economic loss based on a claim that is asserted in a civil action, other than a product liability claim, is not subject to sections 2307.71 to 2307.79 of the Revised Code, but may occur under the common law of this state or other applicable sections of the Revised Code." Economic loss only encompasses "direct, incidental, or consequential pecuniary loss, including, but not limited to, damage to the product in question, and nonphysical damage to property other than that product." Ohio Rev. Code § 2307.71(A)(2). Under the OPLA, a product liability claim is a claim seeking damages for "death, physical injury to person, emotional distress, or physical damage to property other than the product in question." Ohio Rev. Code § 2307.71(A)(13). To the extent Plaintiff alleges the push-in receptacles cause damage to the wiring around the receptacles, these claims are preempted by the OPLA, as would be any claims for the types of damages listed in the above definition of product liability claim. However, to the extent Plaintiff seeks damages for economic loss, his claims do not fall under the purview of the OPLA.

**C. Violation of Ohio Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 *et. seq.***

For the reasons set forth below, this Court dismisses Plaintiff's class action claim that Defendant's deception (Compl. ¶ 35) and misrepresentations (*Id.* at ¶ 36) violated the Ohio

Consumer Sales Practices Act, Ohio Rev. Code § 1345.01 *et. seq.* (OCSPA), but the individual claim may stand.  Ohio Rev. Code § 1345.09(B) sets forth the requirements for bringing a claim under the OCSPA as a class action:

> Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of the consumer's actual damages or two hundred dollars, whichever is greater, or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.

Ohio Rev. Code § 1345.09(B).  In other words, and as clarified in *Marrone v. Philip Morris U.S.A., Inc.*, for a Plaintiff to bring a claim under the OCSPA as a class action, "there must be a substantial similarity between a defendant's alleged violation of the Act and an act or practice previously declared deceptive by either a rule promulgated by the Attorney General or a court decision that was publicly available when the alleged violation occurred." 110 Ohio St. 3d 5, 10 (2006).  Plaintiff's complaint fails to refer to any rule promulgated by the Ohio Attorney General or any publicly available court decision.  In addition, in Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss, Plaintiff concedes he cannot find any rule by the Attorney General or publicly available court decision which satisfies the requirement of declaring an act or practice substantially similar to the alleged violation at issue deceptive.  (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss 18-19.)  Therefore, this Court grants Defendant's Motion to Dismiss the class claim of an OCSPA violation.

However, the individual claim as to an OCSPA violation is not dismissed.  Plaintiff

alleges Defendant misrepresented the push-in receptacles it sold were of superior quality and safe; when in fact, they are inferior in quality to binding screw terminal receptacles and are unsafe.  (Compl. ¶ 36.)  This alleged deception would violate Ohio Rev. Code § 1345.02, which prohibits suppliers from committing "an unfair or deceptive act or practice in connection with a consumer transaction."  Although the relationship between Plaintiff and Defendant appears attenuated and a consumer is "a person who engages in a consumer transaction with a supplier," Ohio Rev. Code § 1345.01(D), a supplier does not have to deal directly with the consumer.  Ohio Rev. Code § 1345.01(C).  In addition, Defendant presented no arguments why Plaintiff's individual claim should not proceed.  Therefore, the individual claim is not dismissed.

**D. Unjust Enrichment**

Defendant also moves to dismiss Plaintiff's unjust enrichment claim.  Unjust enrichment occurs when a person "has and retains money or benefits which in justice and equity belong to another." *Hummel v. Hummel*, 133 Ohio St. 520, 528 (1938).  The purpose of unjust enrichment "claims 'is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on defendant.'"  *Johnson v. Microsoft Corp.*, 106 Ohio St. 3d 278, 286 (2005) (quoting *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335 (1954)).  In order to make a claim of unjust enrichment a plaintiff must allege "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment."  *Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183 (1984).  Defendant argues in its Memorandum in Support of Its Motion to Dismiss that Plaintiff did not confer a benefit on the Defendant and that the circumstances here are not unjust.

First, Defendant argues Plaintiff did not confer a benefit on Defendant. In order for a plaintiff to confer a benefit on a defendant, an economic transaction must exist between the parties. For example, in *Johnson* the court found the plaintiff had not conferred a benefit on the defendant, even though the plaintiff and defendant were bound by an end-user licensing agreement, because the plaintiff did not directly purchase goods from the defendant. 106 Ohio St. 3d at 285. *See also Eisenberg v. Anheuser-Busch, Inc.*, No. 1:04 CV 1081, 2006 WL 290308 (N.D. Ohio Feb. 2, 2006) (the unjust enrichment claim by parents of children using the parents' money to buy alcohol failed because the parents did not allege any economic transaction between themselves and defendants, and the defendants only entered into an economic transaction with retailers and did not have control over who the final consumer of their products would be). Situations in which courts have found that the plaintiff did confer a benefit on the defendant absent privity of contract involve subcontractors, *see Steel Quest, Inc. v. City Mark Constr. Serv.*, No. C-960994, 1997 WL 674614 (Ohio Ct. App. Oct. 31, 1997), or sales when the defendant knew who the customer might be and the product at issue was specifically tailored to the plaintiff. *See Davis v. Lawyers Title Ins. Corp.*, No. 1:06 CV 357, 2007 WL 782158 (N.D. Ohio March 13, 2007). The case here falls into neither of these situations.

Nonetheless, Plaintiff argues that since he "purchased and presently possesses Eagle receptacles" (Compl. ¶ 26), he benefitted Defendant. For support, Plaintiff points to *Everest v. Leviton Mfg. Co.*, No. CV-04-612, 2006 WL 381832 (Me. Super. Jan. 13, 2006), a Maine trial court decision involving a plaintiff's unjust enrichment claim against a manufacturer of push-in receptacles. Although the court found the plaintiff's unjust enrichment claim was deficient for other reasons, the claim did not fail to allege a benefit conferred on defendant by the plaintiff.

The court found that since the plaintiff claimed "he purchased 'one or more' receptacles," the "court can infer from this factual allegation that Plaintiff conferred some pecuniary benefit on Defendant through the chain of sale." *Everest*, 2006 WL 381832, at *4. However, as discussed previously, Ohio courts have not similarly held that purchase of products within a "chain of sale" is sufficient to establish that a plaintiff has bestowed a benefit on a defendant. Therefore, this Court finds Plaintiff's unjust enrichment claim insufficient due to a lack of a factual allegation of a benefit conferred on Defendant by Plaintiff.

Defendant also argues the unjust enrichment claim is insufficient because, even if this Court found that Plaintiff did confer a benefit on Defendant, there is nothing unjust about the Defendant retaining the benefit. Defendant points out Plaintiff has not alleged his receptacles have ever failed to perform. (Def.'s Mem. in Supp. of Mot. to Dismiss 15). In *Chamberlain v. Am. Tobacco Co.*, the court expressly rejected the plaintiffs' claim of unjust enrichment because the plaintiffs did receive a product (cigarettes) in return for their money. No. 1:09-CV-02005-PAG, 1999 WL 33994451, at *15 (N.D. Ohio Nov. 19, 1999). The court even rejected the unjust enrichment claim when the plaintiffs claimed the product caused injury and the defendants' conduct was unconscionable. *Id.* at *16. However, in a later case, *Delahunt v. Cytodyne Techs.*, the court denied the defendant's motion to dismiss the plaintiff's unjust enrichment claim, finding sufficient plaintiff's allegation that "it was unjust for the Defendants to retain the benefit in light of the fact that the product purchased by the class members was not what it was purported to be." 241 F. Supp. 2d 827, 836. Plaintiff in the case at issue likewise alleges the receptacles sold by Defendant are not what they are purported to be. However, unlike the plaintiff in *Delahunt* who alleged that Defendants were aware of the benefit conferred upon them

by the class members, thus sufficiently satisfying the second element necessary for an unjust enrichment claim, *Id.*, Plaintiff here does not satisfactorily allege Defendant knew of any alleged benefit conferred by Plaintiff. Therefore, this court grants Defendant's Motion to Dismiss the unjust enrichment claim.

### E. Breach of Implied Warranty in Tort, Strict Liability, and Negligence Claims

Plaintiff also alleges a variety of tort claims, all of which are inadequate due to Plaintiff's failure to allege a current injury. Plaintiff alleges two negligence causes of action: defective design and failure to warn. At common law, "a product is defective in design 'if it is more dangerous than an ordinary customer would expect when used in an intended or reasonable foreseeable manner or if the benefits of the challenged design do not outweigh the risk inherent in such design.'" *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 424-25 (2002) (quoting *Knitz v. Minster Mach. Co.*, 69 Ohio St. 2d 460 (1982)). For a negligent failure to warn claim, a plaintiff must allege "that the manufacturer knew or should have known, in the exercise of reasonable care, of the risk or hazard about which it failed to warn and that the manufacturer failed to take precautions that a reasonable person would take in presenting the product to the public." *Id.* at 425 (citing *Crislip v. TCH Liquidating Co.*, 52 Ohio St. 3d 251, 257 (1990)). For both of these negligence claims, Plaintiff "must show the existence of a duty, a breach of that duty, and that the breach of that duty proximately caused the plaintiff's injury." *Id.* at 421 (citing *Jeffers v. Olexo*, 43 Ohio St. 3d 140, 142 (1989)). Defendant argues Plaintiff's negligence causes of action are inadequate because Plaintiff fails to allege an injury.

Additionally, Plaintiff brings causes of action for breach of implied warranty in tort and

strict liability.[1] The Ohio Supreme Court has found that "there are virtually no distinctions between Ohio's 'implied warranty in tort' theory and the Restatement version of strict liability," and it has approved and adopted Restatement (Second) of Torts § 402A. *Temple v. Wean United, Inc.*, 50 Ohio St. 2d 317, 322 (1977). Under both the common law elements of breach of implied warranty in tort and the Restatement's strict liability, injury must be alleged. *See id.* at 321 (the third element of a breach of implied warranty in tort claim is that "the defect was the direct and proximate cause of the plaintiff's injuries or loss"); *see also* Restatement (Second) of Torts § 402A (one who sells a defective product "is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property . . ."). Therefore, since, as discussed below, Plaintiff fails to allege an injury, this Court dismisses both Plaintiff's strict liability and breach of implied warranty in tort claims regardless of the terminology in which they are cast.

Defendant asserts Plaintiff's complaint fails to allege a present injury and merely asserts possible future injuries, which are insufficient to satisfy the required allegation of injury. While Plaintiff alleges failures of the Defendant's receptacles have caused fires, property loss, injury, and death, he does not allege he personally has experienced these injuries. (Compl. ¶ 12.) Although Plaintiff also generally claims Defendant's receptacles "damage the fixed wiring in homes" and this damage requires "the rewiring and/or replacement of certain portions of the home electrical wiring" (*Id.* at ¶ 14.), Plaintiff does not specifically allege that he has discovered damaged wiring in his home; and such a claim would constitute damage to other property which

---

[1]Although the complaint does not clearly state the cause of action is breach of implied warranty in tort, rather than a UCC breach of implied warranty claim, Plaintiff states in his Opposition to Defendant's Motion to Dismiss that "this is not a UCC case, but rather a breach of warranty case sounding in tort." (Pl.'s Mem. in Opp'n to Def.'s Mot. To Dismiss 12.)

would fall under the OPLA, as previously discussed.  Additionally, Plaintiff claims he "will in the future be obligated to expend monies necessary to repair and/or replace [his] push-in receptacles with non-defective receptacles."  (*Id.* at ¶ 44.)  This Court has recognized that "the great weight of authority from other jurisdictions indicates that a plaintiff has not suffered a present injury compensable in . . . tort until the very product in question has caused some harm to person or property."  *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, No. 1:02CV00013 (N.D. Ohio Feb. 22, 2005).  Ohio courts have found that "where the wrongful conduct complained of is not presently harmful, the cause of action does not accrue until actual damage occurs."  *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St. 2d 376, 379 (1982); *see also Bouchard v. Am. Home Prod. Corp.*, 213 F. Supp. 2d 802, 807 (N.D. Ohio 2002) (in product liability case involving the diet drug dexfenfluramine hydrochloride, the court found that "Ohio law does not permit recovery for the 'mere possibility' that a plaintiff may develop a condition'"); *see also United States Fire Ins. Co. v. Ohio High Sch. Athletic Ass'n*, 71 Ohio App.3d 760, 764 (Ohio Ct. App. 1991) ("negligent conduct without injury is not actionable").  This abundant case law supports the finding by this Court that Plaintiff's claims are deficient because of a lack of alleged present injury.

In addition, the "no injury" aspects of a suit against a push-in receptacle manufacturer were addressed by the Maine trial court in *Everest v. Leviton Mfg. Co.*, No. CV-04-612, 2006 WL 381832 (Me. Super. Jan. 13, 2006).  Although the court did not find problematic the plaintiff's failure to allege a current injury since the plaintiff was asserting a fraud claim, the court did recognize this situation was "[u]nlike other theories, i.e. negligence, failure to warn, and breach of warranty, in which the product must malfunction before a cause of action lies."  *Id.*

-11-

at *2.  While this holding is not binding upon this court, it is persuasive.

However, Plaintiff argues his allegation of economic loss alone is sufficient to satisfy the required injury element of his claims.  The Court in *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.* recognized that Ohio courts have typically found if a plaintiff has only suffered an economic loss, defined as the decreased value of a certain product, he cannot bring a legally cognizable claim of negligence.  42 Ohio St. 3d 40, 43-45 (1989).  However, if the plaintiff is a consumer who is not in privity with the defendant seller or manufacturer, as is the case here, then "an action in negligence may be an appropriate remedy," and "an action in strict liability may be maintained for purely economic loss."  *Id.* at 46, 49.  Although *Chemtrol* stated the principle that a consumer plaintiff not in privity with a manufacturer or seller defendant could bring a negligence suit solely for economic loss, the case did not involve such a situation since privity between the parties did exist.  *Id.* at 51.  In addition, many of the cases Plaintiff cites for supporting this principle did not involve economic loss alone but also involved other injury.  For example, in *Cincinnati v. Beretta U.S.A. Corp.*, the plaintiff was not suing gun manufacturers merely for economic loss connected to damage to or decreased value of a defective product, but sued to recover significant expenditures on city services.  95 Ohio St. 3d 416, 428 (2002).  *See also Lonzrick v. Republic Steel Corp.*, 6 Ohio St. 2d 227, 229 (1966) (not only were the joists defective, but when they collapsed they fell on and injured the plaintiff).  However, Plaintiff does cite two cases which adequately support the theory that a plaintiff can sue for economic loss alone.  In *United States Fid. & Guar. Co. v. Truck & Concrete Equip. Co.*, 21 Ohio St. 2d 244 (1970), the court found that had the statute of limitations not expired, the insurer plaintiff would have had a proper breach of implied warranty in tort claim to recover its expenditures for the

damages that occurred to a cement truck, sold by defendant, when the cement mixer fell onto the truck chassis. Similarly, in *LaPuma v. Collinwood Concrete*, 75 Ohio St. 3d 64 (1996), the court denied the defendant's motion for summary judgment and allowed plaintiffs to pursue their breach of implied warranty in tort claim to recover economic loss damages on account of a negligently installed driveway that became speckled in color rather than the uniform brown color desired by plaintiffs. These cases support Plaintiff's assertion that he can bring a claim for only economic loss.

However, the economic loss alleged by Plaintiff must be connected to alleged damage to or decreased value of a defective product. Plaintiff alleges generally that push-in terminal receptacles are defective because, unlike binding head terminal receptacles, their contacts deteriorate and degrade over time. Plaintiff does not specifically allege the wiring in the receptacles in his house has deteriorated or he has found any damaged wiring, and he admits he is "not able to detect when the wiring terminals of a receptacle have deteriorated and are overheating to a hazardous level." (Compl. ¶ 50.) Yet, he alleges he intends to replace all the receptacles in his home anyway. The alleged damage to and economic loss of the receptacles is not as clear as, for example, the damage to the cement truck in *United States Fid. & Guar. Co.* or to the concrete in *LaPuma*. In both of those cases, the damage resulted from a product that did not perform or appear as it should. However, in the situation at hand, the alleged damaged contacts and wiring in the receptacles has not led to their malfunction or failure, for they are still operating.

Two other cases involving a manufacturer of receptacles are relevant here. First, in *Faunda v. Leviton Mfg. Co., Inc.*, No. 03 CV 3193 (CP Mahoning Cty. 2004) in which the

plaintiff similarly did not allege the receptacles in his house ever malfunctioned or caused actual physical injury, the judge did not grant defendant's motion to dismiss the plaintiff's cause of action for negligent design. However, the short, three-sentence entry of judgment sheds no light on the judge's reasoning why the pleaded claims were sufficient. In contrast, in a later case from Oklahoma, *Harrison v. Leviton Mfg. Co., Inc.*, the court dismissed the plaintiff's tort causes of action for failure to state a claim because the plaintiff failed to allege a current injury. No. 05-CV-0491-CVE-FHM, 2006 WL 2990524, at *7 (N.D. Okla. Oct. 19, 2006). Even though the plaintiff alleged the defendant's push-in receptacles degrade, he did not allege any discovered damage in the receptacles in his own home, so "he had not suffered any economic or personal injury." *Id.* at *4. The court did not find allegations of future expenses in order to replace the receptacles to be sufficient injury. *Id.* The allegations in the case at issue are very similar to those in *Harrison*. Since Plaintiff only generally alleges that push-in receptacles manufactured by Defendant degrade and deteriorate and does not specifically allege he has discovered damaged receptacles in his own home, this Court grants Defendant's Motion to Dismiss Plaintiff's tort causes of action for failure to state a claim.

### III. CONCLUSION

Most of Plaintiff's causes of action set forth in his complaint fail to state a claim. Plaintiff's unjust enrichment claim fails for a variety of reasons, but mostly for failure to adequately allege that Plaintiff benefitted Defendant. Plaintiff's breach of implied warranty in tort, negligence, and strict liability claims fail because Plaintiff fails to allege a current injury, even injury in the form of economic loss. As for the claim that Defendant violated the OCSPA, Plaintiff concedes the requirements for a class action cause of action cannot be met. However,

Plaintiff's individual claim should still proceed.  Therefore, this Court grants Defendant's Motion to Dismiss under Fed. R. Civ. P 12(b)(6) for all of Plaintiff's claims except for his individual claim that Defendant violated the OCSPA.

**IT IS SO ORDERED.**


**DATE: June 13, 2007**


          s/Christopher A. Boyko
          **CHRISTOPHER A. BOYKO**
          **United States District Judge**